# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FRANK P. BONETT,

      Plaintiff,

v.                                    Case No: 8:20-cv-2106-CEH-TGW

CHRISTOPHER COOK and BOB
GUALTIERI, in his official capacity as
Sheriff of Pinellas County, Florida,[1]

      Defendants.
_____/

## ORDER

    This cause comes before the Court upon Defendants Christopher Cook and Bob Gualtieri's Motion to Dismiss Amended Complaint (Doc. 21). Frank P. Bonett responds in opposition (Doc. 22).

    In this action, a Philadelphia police officer alleges that a Pinellas County sheriff's deputy falsely arrested and imprisoned him. He now sues that deputy individually under 42 U.S.C. § 1983 and lodges claims under Florida law against the Pinellas County Sheriff. The deputy and the sheriff offer several bases for dismissal, including qualified immunity, probable cause, and arguable probable cause. Upon consideration, the Court will grant-in-part and deny-in-part the motion.

---

[1] The parties acknowledge that the Amended Complaint incorrectly identifies the Sheriff of Pinellas County, Bob Gualtieri, who is sued in his official capacity.  Thus, the Court will direct the Clerk to correct the style of the case to reflect Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida.

# I.    BACKGROUND

## A. Factual Background[2]

In April of 2019, Pinellas County Deputy Sheriff Christopher Cook responded to a call from a manager of a restaurant in Indian Shores, Pinellas County, Florida, about a domestic dispute occurring on the premises. Doc. 17 ¶¶3, 5. After arriving, Cook approached two individuals, Cindy Caine and Paul Seeger, as they walked away from the restaurant. *Id.* at ¶6. Caine is a Philadelphia, Pennsylvania police officer, and Seeger is a former Philadelphia police officer. *Id.* Caine and Seeger, who are married, were not engaged in any type of dispute, verbal or otherwise, at the time Cook approached them. *Id.* Video surveillance footage captured Caine and Seeger talking for more than two minutes before capturing Cook running in their direction. *Id.* Before Cook approached Caine and Seeger, William Caine—another Philadelphia police officer who was vacationing in Florida—approached Caine and Seeger, and the three individuals walked out of view of the surveillance camera. *Id.* at ¶7.

Frank P. Bonett—also a Philadelphia police officer—had been in the same restaurant as Caine and Seeger, but he was not present when Cook approached them. *Id.* at ¶¶2, 8. Video surveillance footage captured Bonett walking in the same direction as Cook, Seeger, Cindy Caine, and William Caine. *See id.* at ¶9. Bonett approached the area where Cook was confronting Seeger and Cindy Caine as they returned to the condominium where they were staying. *Id.* According to Cook, Bonett "balled up his

---

[2] The facts are derived from the Amended Complaint, the allegations of which the Court must accept as true in ruling on a Rule 12(b)(6) motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

fists and approached him in a hostile manner," which resulted in Cook arresting Bonett for assault upon a law enforcement officer. *Id.* at ¶10. However, Bonett did not clench his fists, threaten Cook, or otherwise engage in threatening activity. *Id.* at ¶11. The state attorney subsequently declined to prosecute Bonett. *Id.* at ¶12.

### B. Procedural Background

Bonett initiated this action in the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida. Doc. 1 at 1. Cook and Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida, removed the action.[3] Afterwards, the Court dismissed Bonett's complaint as a shotgun pleading and provided Bonett leave to file an amended complaint. Doc. 15 at 5. In the Amended Complaint, Bonett brings four claims: (1) a claim against Cook in his individual capacity under 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution as a result of his false arrest; (2) a claim against Cook in his individual capacity under 42 U.S.C. § 1983 for violation of his rights under the Fourteenth Amendment as a result of his false imprisonment; (3) a claim for false arrest against Gualtieri, in his official capacity as Sheriff of Pinellas County; and (4) a claim for false imprisonment against Gualtieri, in his official capacity as Sheriff of Pinellas

---

[3] Cook and Gualtieri claim that "Robert Gualtieri, Pinellas County Sheriff" is not a legal entity capable of being sued. Doc. 3 at 1 n.1; Doc. 21 at 1 n.1. Bonett concedes that his "use of ROB instead of BOB was a scrivener's error" and that "[a]ll future pleadings will correct this typo." Doc. 22 at 1. No party has sought relief in connection with this misnomer.

County. Doc. 17 ¶¶1, 3, 14–16, 18–22, 24, 27–28, 30, 34. Cook and Gualtieri now move the Court to dismiss the Amended Complaint. Doc. 21 at 16.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   ANALYSIS

Like Cook and Gualtieri, the Court will analyze the claims against Cook before analyzing the claims against Gualtieri. As explained below, the Court will grant-in-part and deny-in-part the motion.

4

## A. Count I

In Count I, Bonett brings a claim under 42 U.S.C. § 1983 against Cook in his individual capacity for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution as a result of Cook's false arrest of him. He alleges that, as a direct and proximate result of Cook's acts, he suffered a "[v]iolation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure and the deprivation of his liberty without due process of law." Doc. 21 ¶¶ 1, 3, 13–15. He also claims that he suffered a loss of his personal freedom and liberty. *Id.* at ¶15. Bonett seeks a judgment against Cook for compensatory damages and costs. *Id.*

Cook first argues that the Court must dismiss Count I to the extent that Bonett asserts that claim under the Fourteenth Amendment because false-arrest claims are based on the Fourth Amendment, not the Fourteenth Amendment. Doc. 21 at 10–11. Cook confines his remaining arguments for dismissal to qualified immunity and probable cause, contending, in relevant part, that the Court must dismiss Count I because Cook had probable cause or arguable probable cause to arrest Bonett. *Id.* at 11–14. In response, Bonett argues that Cook fails to accept Bonett's allegations as true and that the motion resembles a motion for summary judgment.[4] Doc. 22 at 2.

---

[4] Bonett also incorporates his earlier response to the first motion to dismiss, asserting that he already addressed the arguments raised in the motion. Doc. 22 at 1. Bonett, in amending his complaint, altered some of his claims and allegations. To the extent that Bonett's earlier response relies upon allegations specific to only the first complaint, this incorporation provides little value.

42 U.S.C. § 1983 empowers federal courts to vindicate the federal rights of those individuals who suffer harm by those acting with actual or apparent state law authority. *Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1113 (M.D. Fla. 2018). However, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

"Qualified immunity is an affirmative defense," *McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020),[5] which "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (internal quotation marks omitted). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). As such, although the defense of qualified immunity is typically addressed at the summary judgment stage of litigation, it may be raised on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 110 (2020); *see O'Kelley v. Craig*, 781 F. App'x 888, 893 (11th Cir. 2019) ("Because qualified immunity is a defense not only from liability, but

---

[5] Unpublished opinions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

from suit, the defense may be raised in a motion to dismiss."), *cert. denied*, 140 S. Ct. 2641 (2020).

To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (original emphasis removed) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

If a defendant establishes that he was acting within discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted). To that end, the plaintiff must establish that qualified immunity is inappropriate by showing that "(1) the facts alleged make out a violation of a

constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018); *see Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016) (explaining, in analyzing a district court's denial of qualified immunity at the pleading stage, that the first prong is the "merits" prong and the second prong is the "immunity" prong). A court may address either prong first. *See Pearson*, 555 U.S. at 236.

Thus, in analyzing the applicability of the qualified immunity defense raised in a motion to dismiss, the analysis entails two questions once the defendant shows that he was acting within the scope of his discretionary authority: (1) "whether the allegations, taken as true, establish the violation of a constitutional right"; and (2) "if so, whether the constitutional right was clearly established when the violation occurred." *Guerra v. Rockdale Cnty.*, 420 F. Supp. 3d 1327, 1328 (N.D. Ga. 2019) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

In analyzing a § 1983 claim, a court must first isolate the exact constitutional violation with which the defendant is charged. *Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008). "If an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment—not the more generalized notion of substantive due process under the

Fourteenth Amendment—is the guide for analyzing the claim." *Id.* (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

Within Count I, Bonett alleges that Cook has violated his rights under the Fourth and Fourteenth Amendments. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Relatedly "[t]he Supreme Court has made it clear that for claims alleging false arrest under the U.S. Constitution, the Fourth Amendment's freedom from seizure applies." *Basile v. Massaro*, No. 6:10-cv-993-CEH-DAB, 2012 WL 3940282, at *3 (M.D. Fla. Sept. 10, 2012) (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)). And a claim of false arrest under the Fourth Amendment concerns a seizure without legal process, such as a warrantless arrest. *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020); *see Perkins v. Thrasher*, 701 F. App'x 887, 889 (11th Cir. 2017) ("An arrest without probable cause can be an unreasonable seizure in violation of the Fourth Amendment and serve as the basis for a § 1983 claim for false arrest."). As such, because this claim is premised upon an arrest without probable cause, the relevant constitutional right is the right to be free from an unreasonable seizure under the Fourth Amendment. Thus, the Court will dismiss this claim to the extent that Bonett premises the claim upon a violation of the Fourteenth Amendment.

Turning to discretionary authority, Bonett alleges that, "[a]t all times material to this cause of action," Cook "was acting under color of state law and pursuant to his authority as deputy sheriff." Doc. 17 ¶4. Cook argues that this allegation shows that he acted within the scope of his discretionary authority at the time of the alleged false arrest. Doc. 21 at 11. In responding to the motion, Bonett does not dispute that Cook was acting within his discretionary authority when he arrested him. "A police officer generally acts within the scope of his discretionary authority when making an arrest." *McDowell*, 820 F. App'x at 991. Taking Bonett's allegations as true and temporarily placing aside any recognition that Cook's arrest of Bonett may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances, Cook acted within the scope of his discretionary authority when he arrested Bonett. As such, the Court must next examine whether Bonett's allegations, when taken as true, establish the violation of a constitutional right and, if so, whether that constitutional right was clearly established when the alleged violation occurred.

A warrantless arrest lacking probable cause violates the Fourth Amendment. *Ortega*, 85 F.3d at 1525; *see Brown*, 608 F.3d at 734 ("An arrest without a warrant and lacking probable cause violates the Constitution . . . .") *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007) (stating that the Eleventh Circuit's precedent "clearly establishe[s] . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures"). On the other hand, an arrest made with probable cause serves as an "absolute bar to a section

1983 action for false arrest." *Ortega*, 85 F.3d at 1525. "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016). However, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Brown*, 608 F.3d at 734 (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003)). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.* (internal quotation marks omitted).

Bonett's allegations, when taken as true, state sufficient facts indicating that Cook violated a constitutional right that was clearly established at the time of the false arrest. Bonett alleges that Cook, in responding to a call about a domestic dispute, claimed that Bonett balled up his fists and approached Cook in a hostile manner, which resulted in Cook arresting Bonett for assault upon a law enforcement officer.[6] However, Bonett alleges that he did not clench his fists, threaten Cook, or otherwise engage in threatening activity. On this basis, Bonett claims that Cook lacked probable cause to arrest him. Bonett does not allege that Cook possessed a warrant for his arrest.

---

[6] In Florida, an assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). An assault upon a law enforcement officer is reclassified from a second degree misdemeanor to a first-degree misdemeanor. *Id.* § 784.07(2)(a).

In evaluating Bonett's allegations, the Court must accept his well-pleaded allegations as true and draw all reasonable inferences in his favor. *Montgomery Cnty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1254 (11th Cir. 2015). When accepting Bonett's well-pleaded allegations as true and drawing reasonable inferences in his favor, the allegations, although thin, indicate that Bonett did not commit the activity that served as the basis for Cook's arrest of him for assault upon a law enforcement officer. Thus, these allegations, when taken as true, indicate that Cook violated Bonett's Fourth Amendment right when he arrested Bonett without probable cause. The Fourth Amendment right to be free from unreasonable seizures was clearly established at the time of the alleged misconduct on April 30, 2019, *see Brown*, 608 F.3d at 734; *Ortega*, 85 F.3d at 1525; *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) ("An arrest made without probable cause is an unreasonable seizure."), and a reasonable officer would clearly know that arresting Bonett for assault upon a law enforcement officer based on Bonett supposedly balling up his fists and approaching in a hostile manner—when Bonett did not clench his fists, threaten the officer, or otherwise engage in threatening activity—would violate Bonett's Fourth Amendment right to be free from unreasonable seizures, *see Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) ("'The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [law enforcement officer] that his conduct was unlawful in the situation he confronted.'").

Cook's argument that he had probable cause or arguable probable cause to arrest Bonett is unavailing at this stage of the litigation. Cook asserts that, "[u]nder the

facts and circumstances" within his knowledge, "a prudent officer would have reason to believe that [Bonett], a police officer, standing in the vicinity and acting in a way to create a well-founded fear that he had an apparent ability to harm Deputy Cook and that violence was imminent, had committed, was committing, or was about to commit an assault" upon him. Doc. 21 at 12–13. This argument ignores Bonett's allegation that, contrary to Cook's claim, he did not clench his fists, threaten Cook, or otherwise engage in threatening activity, which the Court must accept as true. Cook also claims that even if he was mistaken and lacked probable cause to arrest Bonett, he had arguable probable cause to arrest Bonett. In support, Bonett claims that "the information known to Deputy Cook was that [Bonett], a police officer, standing in the vicinity, balled up his fists and approached him in a hostile manner, while Deputy Cook was trying to arrest two current and former police officers." *Id.* at 13–14 (internal quotation marks omitted). On this basis, Cook contends that reasonable officers in the same circumstances and possessing the same knowledge as Cook could have believed that probable cause existed to arrest Bonett. However, as with Cook's argument for probable cause, this argument ignores Bonett's allegation that he did not clench his fists, threaten Cook, or otherwise engage in threatening activity. This argument also reads absent information into the complaint, such as Cook's assertion that Cook attempted to arrest other individuals. Thus, the Court rejects this argument.

Therefore, based on Bonett's allegations, Cook did not have probable cause or arguable probable cause to arrest Bonett for assault upon a law enforcement officer. Cook violated Bonett's clearly established Fourth Amendment right for persons to be

free from unreasonable seizures in arresting him without probable cause. As such, this claim will not be dismissed on qualified immunity grounds at this stage of the litigation. However, because the instant qualified immunity determination rests upon the allegations in the complaint, a qualified immunity analysis raised on summary judgment may yield a different result. Finally, the Court will dismiss this claim to the extent that Bonett premises the claim upon a violation of the Fourteenth Amendment.

## B. Count II

In Count II, Bonett brings a claim under § 1983 against Cook in his individual capacity for violation of his right under the Fourteenth Amendment to be free from the deprivation of his liberty without due process of law as a result of Cook's false imprisonment of him. Doc. 17 ¶¶ 16, 21. He alleges that Cook, after arresting Bonett and while acting in the course and scope of his employment and under the color of state law, caused Bonett to be imprisoned in the Pinellas County jail. *Id.* at ¶¶18–20. Bonett alleges that, as a direct and proximate result of Cook's acts, he suffered a violation of his constitutional rights under the Fourteenth Amendment to be free from the deprivation of liberty without due process of law. He also suffered loss of his personal freedom and liberty. *Id.* at ¶21. He seeks a judgment against Cook for compensatory damages and costs. *Id.*

Because Cook addresses Count I and Count II together, his arguments for dismissal again focus on qualified immunity, probable cause, and arguable probable cause. Doc. 21 at 11–14. As such, Cook argues that Count II fails because Cook had probable cause, or arguable probable cause, to arrest Bonett. *Id.* Cook claims that he

14

is entitled to qualified immunity as to this claim. *Id.* Cook also argues that the Court should dismiss Count II because Bonett does not allege that he was imprisoned "contrary to his will." *Id.* at 11. Bonett again incorporates his earlier response and generally argues that Cook's arguments are inappropriate for a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. Doc. 22 at 1–2.

The Court must first isolate the exact constitutional violation that Bonett lodges against Cook. Bonett alleges that Cook violated "his constitutional rights under the Fourteenth Amendment[] to the United States Constitution to be free from the deprivation of his liberty without due process of law," Doc. 17 ¶21. "[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). The Eleventh Circuit has held that a district court correctly determined that a plaintiff's claims should be analyzed under the Fourth Amendment, instead of the Due Process Clause of the Fourteenth Amendment, where the plaintiff "premised his claims on his alleged unlawful arrest" and "all of his allegations flowed from this arrest." *Jordan*, 298 F. App'x at 805–06. *See also Ortega*, 85 F.3d at 1526 ("Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest . . . . This false imprisonment claim under section 1983 is grounded in the Fourth Amendment's guarantee against unreasonable seizures."). But the Eleventh Circuit has also analyzed claims for "over-detention" under the Fourteenth Amendment. *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018). "Overdetention means continued detention after

entitlement to release, even though probable cause supported the charge underlying the original detention." *Sosa v. Martin Cnty.*, 13 F.4th 1254, 1267 (11th Cir. 2021).

Here, Bonett's allegations flow from the preceding arrest, for which Bonett alleges that Cook lacked probable cause. Bonett simply alleges that Cook caused him to be imprisoned after arresting him and that Cook "lacked probable cause to imprison him." *Id.* at ¶19. These concise allegations generally address unlawful pretrial detention. Bonett does not allege any facts relevant to over-detention, and he again alleges a lack of probable cause. As explained above, "[i]f an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment—not the more generalized notion of substantive due process under the Fourteenth Amendment—is the guide for analyzing the claim." *Jordan*, 298 F. App'x at 805. "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Thus, because the allegations for this claim flow from the preceding arrest, for which Bonett alleges that Cook lacked probable cause, the claim cannot proceed under the Fourteenth Amendment.[7] *See Presnell v. Ga. Bureau of Investigation*, No. 4:10-

---

[7] Previously, Bonett brought one claim under § 1983 against Cook for violation of his constitutional rights under the Fourth and Fourteenth Amendments, alleging that Cook "falsely arrested and imprisoned" him. Doc. 1-2 ¶¶14–15. The Court dismissed that complaint as a shotgun pleading, noting that Bonett brought one § 1983 claim for violation of distinct rights as a result of a false arrest and a false imprisonment. Doc. 15 at 4. Given the nature of Bonett's allegations, the Court emphasized that whether Bonett intended for the false imprisonment to refer to the false arrest or some additional, unarticulated conduct or event was unclear and should be clarified upon repleading. Doc. 15 at 4 n.3. Citing to the Eleventh Circuit's holding in *Ortega v. Christian*, the Court explained, "*Generally*, a false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against

cv-0060-HLM, 2010 WL 11520595, at *6–7 (N.D. Ga. Dec. 28, 2010) (finding that the plaintiff's claim could not proceed under the Fourteenth Amendment because his allegations flowed from his allegedly illegal arrest), *aff'd sub nom. Presnell v. Paulding Cnty.*, 454 F. App'x 763 (11th Cir. 2011).

Because Bonett, as "the master of his . . . complaint," *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021), brings this claim as a violation of the Fourteenth Amendment, the Court will analyze the claim under the framework for analyzing a § 1983 claim alleging false imprisonment in violation of that Amendment upon an assertion of qualified immunity. To receive qualified immunity for this claim, Cook must first establish that he acted within the scope of his discretionary authority when the allegedly wrongful acts occurred. As with Count I, Cook highlights Bonett's allegation that, "[a]t all times material to this cause of action," Cook "was acting under color of state law and pursuant to his authority as deputy sheriff." Doc. 17 ¶¶4, 17. Bonett also alleges within Count II that, after arresting him, Cook, "acting [within] the course and scope of his employment and under color of state law caused [Bonett] to be imprisoned in the Pinellas County Jail." *Id.* at ¶18. Once again, Bonett does not

---

deprivations of liberty without due process of law." *Id.* (internal alteration omitted) (emphasis added) (quoting 85 F.3d at 1526). Notably, the Eleventh Circuit held that the false imprisonment claim in *Ortega* was "grounded in the Fourth Amendment's guarantee against unreasonable seizures" before holding that the defendant "knew or should have known" that the plaintiff's imprisonment for five months without a line-up or opportunity to show his innocence "may have constituted an unlawful imprisonment under section 1983 in violation of the Fourteenth Amendment." 85 F.3d at 1526. *Ortega* "establish[es] that a claim of false imprisonment, absent misidentification, depends on an absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009). In amending his pleading, Bonett has added Count II and brought the claim as a § 1983 claim for violation of the Fourteenth Amendment.

dispute that Cook was acting within his discretionary authority. Thus, accepting Bonett's allegations as true and temporarily placing aside any recognition that Bonett acted for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances, Cook acted within the scope of his authority when, after arresting Bonett, he "caused him to be imprisoned in the Pinellas County Jail."

As such, the Court must analyze whether Bonett's allegations, taken as true, state a violation of his Fourteenth Amendment right to be free from a deprivation of liberty without due process and, if so, whether that constitutional right was clearly established when the violation occurred. "A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021); *see Darnell v. Rivera*, No. 6:15-cv-999-RBD-TBS, 2016 WL 309050, at *5 (M.D. Fla. Jan. 26, 2016) ("To state a § 1983 claim for false imprisonment, Plaintiff must adequately allege the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of his due process rights under the Fourteenth Amendment."). The elements of common-law false imprisonment are: (1) an intent to confine; (2) an act resulting in confinement; and (3) the victim's awareness of the confinement. *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). For the Fourteenth-Amendment prong of this analysis, "a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer 'had subjective knowledge

of a risk of serious harm and disregarded that risk by actions beyond mere negligence'" to establish a due process violation. *Helm*, 989 F.3d at 1278–79 (quoting *Campbell*, 586 F.3d at 840). "If an officer has arguable probable cause to seize an individual, that finding may defeat a claim of deliberate indifference." *Id.* Relatedly, a claim for false imprisonment under § 1983 fails if the officer had probable cause for the arrest. *Quire v. Miramar Police Dep't*, 595 F. App'x 883, 886 (11th Cir. 2014).

When accepting Bonett's well-pleaded allegations as true and drawing all reasonable inferences in his favor, he fails to allege a violation of a constitutional right. He alleges only that Cook falsely arrested him for assault upon a law enforcement officer and caused him to be imprisoned in the Pinellas County Jail. While Bonett alleges an act resulting in confinement (his false arrest), he does not allege an intent to confine him or his awareness of the confinement. Even if the Court finds that Cook sufficiently alleges these elements of common-law false imprisonment, he does not sufficiently allege that his imprisonment was a violation of due process under the Fourteenth Amendment, as he fails to allege that Cook acted with deliberate indifference. Bonett does not allege that Cook had subjective knowledge of a risk of serious harm and disregarded such risk by actions that extended beyond mere negligence. As a result, the Court need not analyze whether the purported violation was clearly established at the time. Because Cook has demonstrated that he acted under his discretionary authority and Bonett's allegations fail to state a violation of the

Fourteenth Amendment, Cook is entitled to qualified immunity for this claim.[8] Therefore, the Court will dismiss this claim with prejudice. *See Nichols v. Maynard*, 204 F. App'x 826, 829 (11th Cir. 2006) (reversing a district court's holding that the defendants were not entitled to qualified immunity on a motion to dismiss where the plaintiff insufficiently alleged reckless indifference and remanding to the district court to dismiss the action against the individual defendants with prejudice). Finally, Cook's argument that the Court must dismiss this claim because Bonett does not allege that he was imprisoned "contrary to his will" fails because this type of § 1983 claim does not require Bonett to allege that he was imprisoned "contrary to his will."

### C. Count III and Count IV

Given their similarity, the Court will address Count III and Count IV together. In both counts, Bonett sues Pinellas County Sheriff Bob Gualtieri, in his official capacity, under state law for the actions of Cook. In Count III, Bonett sues Gualtieri for false arrest under Florida law and, in Count IV, he sues Gualtieri for false imprisonment under Florida law. Gualtieri argues that the Court must dismiss these claims because Cook had probable cause to arrest Bonett. Doc. 21 at 15–16. Bonett responds that this probable cause argument is flawed and inappropriate for a motion to dismiss. Doc. 22 at 2–3. He also reiterates his argument in response to the "contrary

---

[8] Because Bonett fails to allege a constitutional violation, the Court need not address Cook's argument that the Court should dismiss this false imprisonment claim under § 1983 for violation of the Fourteenth Amendment because he had probable cause or arguable probable cause.

to his will" argument. Gualtieri's probable cause argument is unsuccessful at this stage of the litigation.

The Florida Supreme Court has held that "[t]he action for false imprisonment is usually distinguishable in terminology only from the action for false arrest." *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944). *But see Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010) ("False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment"). Indeed, under Florida law, "the largely synonymous torts of false arrest, false detention, and false imprisonment are defined as the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Bartley v. Kim's Enter. of Orlando, Inc.*, 568 F. App'x. 827, 833–34 (11th Cir. 2014) (internal quotation marks omitted) (original emphasis removed). The causes of action have nearly identical elements. To state a claim for false arrest under Florida law, a plaintiff must allege: "(1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances; and (3) an intentional detention." *Manners v. Canella*, 891 F.3d 959, 975 (11th Cir. 2018). Similarly, a plaintiff must allege the following elements for a false imprisonment claim: "1) the unlawful detention of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *City of Boca Raton v. Basso*, 242 So. 3d 1141, 1143 (Fla. 4th DCA 2018).

"The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). While a plaintiff who asserts a § 1983 claim bears the burden of showing the absence of probable cause, probable cause is an affirmative defense under state law. *Davis v. City of Apopka*, 734 F. App'x 616, 621 n.7 (11th Cir. 2018). The existence of an affirmative defense generally will not support a motion to dismiss, but a complaint may be dismissed under Rule 12(b)(6) "when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc). Thus, the Court may dismiss Count III and Count IV only if the existence of probable cause appears on the face of the Amended Complaint.

Taking Bonett's allegations as true, the existence of probable cause for his arrest and resulting imprisonment is not clear from the face of the Amended Complaint. As discussed, Bonett alleges that Cook, in responding to a call about a domestic dispute, claimed that Bonett balled up his fists and approached Cook in a hostile manner, which resulted in Cook arresting Bonett for assault upon a law enforcement officer. But Bonett alleges that he did not clench his fists, threaten Cook, or otherwise engage in threatening activity. Thus, accepting Bonett's allegations as true, he did not commit the activity that served as the basis for Cook's arrest of him for assault upon a law enforcement officer and the resulting imprisonment. Based on these allegations, the face of the complaint does not clearly show that the facts and circumstances known to

22

Cook were sufficient to warrant a prudent man in believing that Bonett had committed or was committing an offense. *See Joyce v. Crowder*, 509 F. App'x 969, 970 n.1 (11th Cir. 2013) (explaining that federal law and Florida law define probable cause in the same manner). Thus, Gualtieri's probable cause argument is unavailing at this stage of the litigation. Gualtieri may raise this argument on summary judgment, as appropriate.

Finally, Gualtieri challenges Count IV for Bonett's purported failure to allege a requisite element, arguing only that the Court must dismiss Count IV because Bonett does not allege that he was imprisoned "contrary to his will." Doc. 21 at 14. Bonett responds that, because he has alleged that he did not assault Cook and that he was falsely arrested and imprisoned, "one wonders how a false arrest or imprisonment takes place in any other circumstances except against one's will." Doc. 22 at 2. Under Florida law, Bonett must allege, among other elements, an unlawful detention "against his will." *Basso*, 242 So. 3d at 1143. Here, when accepting Bonett's well-pleaded allegations as true and drawing all reasonable inferences in his favor, Bonett has sufficiently alleged that the imprisonment was against his will because the imprisonment resulted from an arrest for acts that he did not commit. Thus, the Court rejects this limited argument.

## IV.   CONCLUSION

At this stage of the litigation, all claims except for Count II survive. To the extent that Cook and Gualtieri raise qualified immunity, probable cause, or arguable

probable cause as defenses in answering the Amended Complaint, their assertion of those defenses may be more successful on summary judgment.

Accordingly, it is **ORDERED**:

1. Defendants Christopher Cook and Bob Gualtieri's Motion to Dismiss Amended Complaint (Doc. 21) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. The Motion to Dismiss is **GRANTED** as to Count I to the extent that Bonett premises the claim upon a violation of the Fourteenth Amendment.

3. The Motion to Dismiss is **GRANTED** as to Count II. Count II is **DISMISSED WITH PREJUDICE** based on qualified immunity.

4. The Motion to Dismiss is **DENIED** in all other respects.

5. Cook and Gualtieri shall answer Count I, Count III, and Count IV of the Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure.

6. The Clerk is directed to correct the style of the case to reflect as a Defendant, Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida.

**DONE AND ORDERED** in Tampa, Florida on November 3, 2021.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

24